**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW MEXICO**

WILLIAM B. ACHEFF,

      Plaintiff and Counter-Defendant,

vs.                            CIVIL ACTION NO.: 1:12-cv-00100 -JCH-RHS

PETER B. LAZARE, as Trustee
of the EDELMAN TRUST a/k/a the
JON J. EDELMAN TRUST U/T/A
dated March 19, 1996, as Amended;
and UNITED STATES OF AMERICA,
BY AND THROUGH THE INTERNAL
REVENUE SERVICE (IRS);

      Defendants,

UNITED STATES OF AMERICA,

      Defendant, Counter-Plaintiff, Cross-Plaintiff,
      and Third-Party Plaintiff,

vs.

PETER B. LAZARE, as Trustee
of the EDELMAN TRUST a/k/a the
JON J. EDELMAN TRUST U/T/A
dated March 19, 1996, as Amended;

      Cross-Defendant.

JOHN EDELMAN a/k/a JON J. EDELMAN or
JOHN J. EDELMAN,

      Third-Party Defendant.

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant Peter Lazare's[1] *Revised Motion for*

---

[1]While the instant motion is titled "Edelman Trust's Revised Motion . . .", the Court notes that Lazare (in his capacity as Trustee) is the named Defendant and Cross-Defendant identified in the Complaint.

*Partial Summary Judgment on Whether the Edelman Trust is a Sham, Lacks Economic Substance or is a Self-Settled Trust* (Doc. 71).  In the underlying action, Co-Defendant United States of America ("the Government") brings a cross-claim for foreclosure against Lazare as Trustee of the Jon J. Edelman Trust *U/T/A* dated March 19, 1996 as Amended ("the Edelman Trust"), which holds title to the property that is the subject of this case.  The Government's cross-claim asserts the theories that (1) the Edelman Trust is the nominee/alter ego of its beneficiary Jon J. Edelman, a debtor against whom the Government has multiple tax liens and judgments, and/or that (2) the Edelman Trust is a sham or was self-settled by Jon Edelman – theories that, if proven, would allow the Government to foreclose the subject property and use the proceeds of its public sale to satisfy Jon Edelman's tax liabilities.[2]

On the instant motion, Lazare seeks, *inter alia,* a judgment that the Government's veil-piercing theories are inapplicable to the relationship between Jon Edelman and the Edelman Trust.  The Court having considered the motion, briefs, exhibits, and the relevant law, and being otherwise fully informed, finds that Lazare's motion is not well-taken and should be denied.

---

[2]This Court has previously found that any interest the Government may possess in the subject property is secondary to Plaintiff William B. Acheff's mortgage on the property.  *See* Doc. 77 at 12-13.  Accordingly, the Court held that, should the Government prove at trial that it possesses a lien right in the subject property, it would be entitled only to any excess funds from its public sale, after Plaintiff is made whole.  *Id.; see also* Doc. 97 at 3-4 (amending Doc. 77 to clarify that Government's property interest and right of redemption, if any, must be determined before foreclosure sale).

## FACTUAL BACKGROUND

### Creation of the Edelman Trust for Benefit of Edelman and Children

The Edelman Trust was allegedly created by the late Mildred Ash, as Grantor, by execution of a Trust Agreement dated March 19, 1996, under the laws of New York.  The beneficiaries of the Edelman Trust are Ash's son, Third-Party Defendant Jon J. Edelman, and his children, Justin, Harrison, and Jessica.  Ash is now deceased.  The Trust beneficiaries are still living.

### Trustees of the Edelman Trust

Dennis Stein served as Trustee of the Edelman Trust from its inception until June 2006, when Defendant/Cross-Plaintiff Peter B. Lazare took over as Trustee.  Neither Stein nor Lazare is related to Mildred Ash or any beneficiary of the Edelman Trust.  Both Stein and Lazare testified to having personal and/or business relationships with beneficiary Jon Edelman at the time they assumed the Trustee's position, with Stein serving as Edelman's personal counsel in both civil and criminal matters for many years.

It is unclear from the record whether other Trustees have ever acted on behalf of the Edelman Trust, either singly or jointly with Stein or Lazare, or whether Stein and Lazare served as joint Trustees for any period of time.  *See* Doc. 71 Ex. 3 Lazare Dep. at 128:7-129:9 ("I am literally now finally the sole trustee.  Any decision that's made is my decision at this point.").

### Relevant Provisions of the Edelman Trust

The Trust provides:

During the lifetime of the Beneficiaries, the Trustee shall use and apply so much of the net income and principal of the Trust Property, whether some, all or none, as the Trustee may, in the Trustee's sole and absolute discretion, deem advisable.

3

> Neither the principal nor the income of the Trust created herein shall be subject to seizure by any beneficiary's creditor under any writing or legal equitable proceeding. No beneficiary shall have any power to sell, assign, transfer, encumber, or in any other manner anticipate or dispose of his or her interest in the trust or the income produced thereby.

> Unless sooner terminated by distributions of principal pursuant to Paragraph A of this Article II, the Trust created pursuant to this Agreement shall be terminated when the last Beneficiary attains the age of twenty-five years or at the earlier death of the last Beneficiary. Upon termination, all remaining principal shall be paid to the Beneficiaries, as the Trustee may determine in his sole discretion.

(Doc. 71 Ex. 1).

The Trust ends when Jon J. Edelman's youngest child, Jessica, reaches the age of twenty-five (25). At all times relevant to the instant action, the Edelman Trust held assets.

**Funding of the Edelman Trust, by Sources Including the Jon Edelman-Settled Delos Trust**

Mildred Ash initially funded the Edelman Trust by transferring securities into the Trust. After her death, the Trust received further funding from her Estate. It is undisputed, however, that on dates not set forth by the parties, the Trust also received monies from the Delos Trust, a Trust that Jon Edelman settled under the laws of the Principality of Liechtenstein in March 1993. It appears from the summary judgment record that the Delos Trust and the Edelman Trust had at least some of the same beneficiaries -- Jon Edelman and his children. *See* Doc. 71 Ex. 4 Stein Dep. at 142:13-142:20 (Stein answering question of "why the Delos Trust would be wiring money into the Edelman Trust to pay [its] beneficiaries," that it was "kind of cumbersome" for the Delos Trust to make distributions to its beneficiaries "from overseas"); *id.* at 143:24-144:2 (Stein testifying that he "viewed the purposes of the two trusts as parallel, we were both charged with help – providing for the beneficiaries, and they had more money than we did, so they paid more stuff than the Edelman Trust did."). The parties do not set forth any specific facts

regarding the purpose, or funding of the Delos Trust in their briefs on the instant motion.

On a number of unspecified occasions, the Delos Trust provided the Edelman Trust with money "to pay for tuition[] or things like that."  (Doc. 71 at 4).  These distributions occurred in two ways, as the Delos Trust would either (1) wire money into the law firm bank account of Jon Edelman's attorney and the Edelman Trust's then-Trustee, Dennis Stein; or would (2) wire money directly to the Edelman Trust "for designated distributions to the Delos Trust beneficiaries."  *Id.*

**Delos Trust Supplies Edelman Trust With Funds to Purchase Subject Property**

It is undisputed that "there were funds from the Delos Trust which . . . passed through the Edelman Trust and contributed with Edelman Trust funds toward the purchase and debt servicing for the Taos Residence" in 1998.  *Id*. at 7.(Doc. 32 Ex. 9 Stein Dep. at 50:13-50:14; 54-55) (Stein testifying that the Delos Trust wired $900,000 into Edelman Trust in order to obtain a second mortgage needed to re-purchase the subject property).

On a date not set forth by the parties, distributions from the Delos Trust to the Edelman Trust ceased when the former Trust ran out of money.  Since Lazare assumed the role of Trustee in 2006, replacing Stein, the only funds coming into and disbursed from the Trust have been funds from the Mildred Ash estate.

**Stein's Operation of the Edelman Trust and Purchase of the Subject Property**

Stein testified at his deposition that, during the period in which he served as Trustee, Jon Edelman would submit requests to the Edelman Trust to cover his personal expenses.  Stein would "[g]enerally . . . not make [direct] payments of money to Jon Edelman, but would try to reimburse him for expenses."  *Id.* at 5 (citation omitted). Stein testified that he would not grant reimbursement requests that appeared excessive or improper.

5

In addition to serving as Trustee, Stein served as Jon Edelman's legal counsel from 1987 to 2006, representing him in both criminal and civil matters – "[w]hatever legal needs he had, I handled for him."  (Doc. 32 Ex. 9 Stein Dep. at 50:13-50:14).

Stein purchased the subject property on behalf of the Edelman Trust in 1998.  Stein testified at his deposition that Edelman was in federal prison in Texas at the time the subject property was re-purchased,[3] and that Edelman "brought up the subject [of re-purchasing the subject property] at some point in time."  (Doc. 71 Ex. 4 Stein Dep. at 191:9-191:13).  Stein testified, however, that he consulted with all beneficiaries, including Edelman's children, Harrison, Justin, and Jessica, prior to authorizing the purchase or re-purchase of the subject property.  Stein acknowledged that he did not view the property prior to authorizing the purchase, but looked at photographs of the property and reviewed property values.

Harrison, Justin, and Jessica were 12, nine (9), and six (6) years old, respectively, in 1998.

**Lazare's Operation of the Edelman Trust**

Peter Lazare assumed the duties of Trustee in June 2006.  Pursuant to his role, Lazare testified at his deposition that he conferred with Jon Edelman to work out a fair amount for each of the Edelman children to live on.  Lazare testified that the beneficiaries would make requests for funds to him, and if the requests were not "crazy, irrational, or through [sic] the moon," *id.* at 6 (citation omitted), he would grant them.  According to Lazare, beginning in December of 2006, the Trustee's past practice of sending money to Jon Edelman and having Jon Edelman distribute

---

[3]At various places in the deposition transcripts, the transaction is characterized as a re-purchase of the subject property, which had been owned by members of the Edelman family at a previous time.

money to his children ceased, and Lazare began distributing money directly to the children. Lazare testified that he discussed these decisions with Jon Edelman.

**Trust's Bank Account**

The Edelman Trust has filed income taxes since its inception, according to Trust records, and has had its own bank account, with Peter Lazare as its only signator since 2006.   Lazare testified at his deposition that Trust records do not indicate that Jon Edelman ever had access to the Trust's account.

**Delos Trust Obtains Title to Edelman's Yacht From Another Edelman Corporation, Edelman Trustees Act on Behalf of Delos Trust With Regard to Maintaining Yacht**

The *Elusive* is a 55-foot yacht built in 1984 and initially titled to the Serendipity Marine Limited, an Oregon corporation, of which Jon Edelman (and later his then-wife, Barbara) was President.  Since 2006, title to the *Elusive* has been held in the name of AstroLabe Marine, an entity affiliated with The Harbour Trust Co. Ltd., a corporation located in the Cayman Islands.  AstroLabe Marine's single shareholder is the Delos Trust.

During the period that Dennis Stein served as Trustee of the Edelman Trust (1996-2006), it is undisputed that he would, at the request of Jon Edelman, make payments on behalf of the Delos Trust for the *Elusive's* docking fees and repairs.  It is unclear from the record whether the Delos Trust provided funds for maintaining the *Elusive* before title was transferred to AstroLabe Marine.

On a date not set forth by the parties, the Delos Trust abandoned AstroLabe Marine, and stopped paying its directors' expenses and taxes.  In 2007, Lazare, acting on behalf of the Delos Trust, paid $17,121 to AstroLabe for expenses related to the Elusive, which was not titled to the

Edelman Trust or any of its beneficiaries.[4] Also in 2007, Lazare paid $48,189.36 in expenses to re-commission the Elusive while it was docked in Connecticut.

On October 31, 2007, Peter Anderson of the Harbour Trust Co. Ltd. sent Lazare an e-mail advising him that government fees concerning Astrolabe had been outstanding since January 2006 and needed to be paid. Attached to the email was a copy of a consent letter authorizing Jon Edelman to take the yacht to Florida. The same day, Lazare responded to Anderson, agreeing to wire transfer the monies owed.

In 2008, Lazare paid $82,788.92 for maintaining and operating the Elusive while it was docked in Connecticut.

On a date not set forth by the parties, Lazare offered to pay AstroLabe's director's fees in an effort to get the Delos Trust to transfer the *Elusive* to the Edelman Trust. For reasons not set forth by the parties, the yacht's title was not transferred as proposed. Consequently, in January 2009, Lazare filed a lien against the *Elusive* with the Connecticut Secretary of State for all the expenses he had paid, in the event the yacht was sold.

On September 5, 2009, Peter Anderson sent Lazare an email concerning AstroLabe, urging Lazare and Edelman to resolve the "share transfer matter" over the Delos Trust with the Trustee of the Delost Trust, Dr. Johannes Burger, an attorney with Protec Trust Management in Principality of Liechtenstein.

On December 20, 2010, Ian Williams at Ocean Rigging – an unspecified entity in Norwalk, Connecticut – sent an e-mail Jon Edelman and Lazare, asking if Edelman wanted to

_____

[4]Lazare does not specifically dispute the Government's factual assertions that he and his predecessor Trustee, Stein, acted on behalf of the Delos Trust, though the Government also proffers evidence that Dr. Johannes Burger was Trustee of the Delos Trust. *See infra.*

"cover" the *Elusive.*  On January 3, 2011, Williams sent an e-mail to Edelman and Lazare

attaching an invoice for $909.32 for repairs to the *Elusive.*

**Edelman Trust Distributions to Jon Edelman for Personal Expenses**

In 2007, Lazare made cash disbursements of $37,848.95 to Jon Edelman by wire

transfers.

Over the course of 2008, Lazare paid $92,766.39 of Jon Edelman's expenses and

distributed $37,400 in cash to Jon Edelman. The $128,963 in total federal distributable net

income Lazare reported as paid to Jon Edelman for the year accounted for 54.08 % of all the

Edelman Trust distributions made to its beneficiaries.

On March 20, 2009, Jon Edelman signed a promissory note promising to

pay Peter Lazare, Trustee of the Jon J. Edelman Trust, $19,500.  The promissory note states that

is was given to evidence a "loan" toward the purchase of a 2009 Nissan automobile, but does not

provide for installment payments or specify a maturity date.

In 2010, Lazare also paid $26,707.14 of Jon Edelman's expenses and distributed

$36,906.91 in cash to Jon Edelman.  Edelman received 45.36 % of all the Edelman Trust

beneficiary distributions for the year 2010.

On August 17, 2011, ChrisAnn Chavez of the Peoples Bank in Taos, New

Mexico, sent an e-mail to Lazare advising that she was "working on finalizing the refinance

loan of the Nissan into the Trust."  She attached a February 1, 2007, balance statement of assets

and liabilities for the Edelman Trust, and requested information from the Trust including the

mortgage payment amount for the subject property.

**IRS Tax Liens Against AstroLabe**

On May 29, 2012, the IRS filed a Notice of Federal Tax Lien against AstroLabe

9

Marine Enterprises, Ltd., as the nominee/alter ego/transferee of Jon Edelman with respect to the *Elusive* in Taos County, New Mexico, for the unpaid balance of assessments for tax years 1992-1998, and 2003, in the amount of $68,106.12, and for the unpaid balance of assessments for tax years 1979-1982, 1984, 1985, and 1987, in the amount of $225,186,358.46.

On June 6, 2012, the IRS filed a Notice of Federal Tax Lien against AstroLabe as the nominee/alter ego/transferee of Jon Edelman with respect to the *Elusive* in the official records of the San Diego County Recorder's Office, for the unpaid balance of assessments for tax years 1992-1998, and 2003, in the amount of $68,106.12, and the an unpaid balance of assessments for tax years 1979-1982, 1984, 1985, and 1987, in the amount of $225,186,358.46.

## LEGAL STANDARD

### Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure requires that summary judgment be rendered "where no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law." *Hackworth v. Progressive Cas. Ins. Co.*, 468 F.3d 722, 725 (10th Cir. 2006); *see also* Fed. R Civ. P. 56(c)(2). The moving party bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (internal quotation and marks omitted). Once this burden has been met, "the burden shifts to the nonmoving party to show that there is a genuine issue of material fact. The party opposing the motion must present sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor." *Id. See also Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1993). It is not enough for the

nonmoving party to "rest on mere allegations or denials of his pleadings" to avoid summary

judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *see also West v. New*

*Mexico Taxation and Rev. Dept.*, No. Civ. 09-0631, U.S. Dist. LEXIS 131626, at *42 (D.N.M.,

Oct. 31, 2010) ("[n]or can a party avoid summary judgment by repeating conclusory opinions,

allegations unsupported by specific facts, or speculation") (internal quotation and marks

omitted). In reviewing a motion for summary judgment, the court must "examine the factual

record and draw reasonable inferences therefrom in the light most favorable to the nonmoving

party." *Brammer-Hoelter v. Twin Peaks Charter Academy*, 602 F.3d 1175, 1184 (10th Cir.

2010). Its function at this stage is "not . . . to weigh the evidence and determine the truth of the

matter, but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 243.


## **DISCUSSION**

### I.     **The Government's Nominee Theory**

Count I of the Government's Third-Party Complaint asserts that the Edelman Trust is the

nominee of Jon Edelman.  (Doc. 9 Third-Party Cplt. ¶¶ 19-87).  Lazare does not seek a summary

judgment on the Government's nominee claim. *See, e.g.,* Doc. 71 at 3 (Lazare noting that he

only "seeks dismissal of Count II of the Government's Cross-Claim").  Nevertheless, Lazare

devotes a portion of his brief to analyzing the nominee issue for the stated purpose of

"establish[ing] that it has no bearing on the Trust's continued viability[,] no matter how that

issue is ultimately decided by this Court." *Id.* at 9.  Lazare does not request a declaratory

judgment on the nominee issue.  The Court need not reach Lazare's arguments on the instant

cause of action, nor the Government's responses to them, as they are not part of the basis of the instant motion.

## II.   Veil-Piercing Theories Contained in the Government's Count II

Count II of the Government's Third-Party Complaint alleges that the Edelman Trust is a self-settled trust or sham that "should be disregarded for tax purposes," so that the subject property "be treated as property of the taxpayer, Jon Edelman, for purposes of tax collection." (Doc. 9 Third-Party Cplt. ¶ 90). While the Government does not mention an "alter ego" theory in the heading of Count II, its Complaint elsewhere asserts that "federal tax liens against Peter B. Lazare, Dennis Stein, and Dennis L. Stein, as Trustees of the Edelman Trust, as the *nominee/alter ego/transferee* of Jon Edelman . . . attach to the subject property." *Id.* ¶ 99 (emphasis added).

The Government previously moved for a summary judgment that the veil-piercing theories set forth in Count II applied to the relationship between Jon Edelman and the Edelman Trust (Doc. 32), which the Court subsequently denied (Doc. 77). The Court found that the Government failed to identify "the state-law theory or theories under which it asserts that Jon Edelman has a beneficial interest in the subject property, or that the Edelman Trust is self-settled or a sham. . . . Because [the Government] has not addressed the pertinent questions of state property law . . . the Court cannot determine what, if any, state-delineated rights Jon Edelman has to the subject property, and whether such rights fall within the compass of federal tax lien legislation."  (Doc. 77 at 8-9) (discussing how determination of **"**whether a particular asset falls within reach of a federal lien" requires Court to determine "(1) what rights under state law, if

any, a delinquent taxpayer has in an asset the IRS seeks to attach, and (2) whether those "state-delineated rights qualify as 'property' or 'rights to property' within the compass of federal tax lien legislation.'") (quoting *In re Krause*, 637 F.3d 1160, 1163 (10th Cir. 2011)).

Lazare now moves for a summary judgment as to the inapplicability of the three veil-piercing theories set forth in the Government's Count II.  In support of the instant motion, Lazare argues that the Government's alter ego claim should be analyzed under New Mexico State law.[5]  For its part, the Government concedes that "some federal courts considering alter ego claims in federal tax collections cases have analyzed the relationship between the two [entities] under state law," but maintains "that federal law controls the question."  (Doc. 72 at 8). The Government cites no authority, legal or otherwise, in support of its position, but contends generally that application of federal law "is supported by considerations of national uniformity of tax collection."  *Id.*  However, the Government further observes that "there is ultimately probably very little substantive difference" between an alter ego analysis under New Mexico law or federal common law, and proceeds to apply New Mexico law to its claim.  Accordingly, the Court will assess Lazare's alter ego claim under New Mexico State law, for purposes of resolving the instant motion.

### A.        Whether the Edelman Trust Was an Alter Ego of Jon J. Edelman

Under New Mexico law, three requirements must be demonstrated in order to pierce the corporate veil: (1) instrumentality or domination; (2) improper purpose; and (3) proximate causation.  *Scott v. AZL Resources, Inc.*, 107 N.M. 118 (S. Ct. 1988); *see also Harlow v. Fibron*

---

[5]Both parties continue to analyze the Government's self-settlement and sham under federal standards.  *See infra* at 17-21.

*Corp.*, 100 N.M. 379, 382 (Ct. App. 1983).

### 1. *Instrumentality or Domination*

"'Instrumentality' or 'domination' means proof that the . . . subservient [entity] was

operated not in a legitimate fashion to serve the valid goals and purposes of that [entity] but

functioned instead under the domination and control and for the purposes of some dominant

party." *Scott*, 107 N.M. at 120.  In support of his position that there is insufficient evidence in

the record to support a finding that Jon Edelman dominated the Edelman Trust for his own

purposes, Lazare merely asserts casually that

> In the case at bar, the trust was set up by Ms. Ash to assist in the support of her
> son and grandchildren, knowing that any funds generated by her son would go to
> the IRS. That is how the Trust continues to function. Jon Edelman has no right to
> control the Trust and there is no evidence that he does.

(Doc. 71 at 11).   Lazare does not address the undisputed fact that, at Jon Edelman's request, the

Edelman Trust obtained funding from the Jon Edelman-settled Delos Trust in order to secure the

purchase of the subject property, let alone explain how this transaction does not constitute

evidence of instrumentality.  While Lazare need not prove the absence of a factual dispute in

order to shift the summary-judgment burden to the Government, his conclusory assertion that

there is "no evidence" of domination in this case –  in contradiction of undisputed facts that a

reasonable jury may view as evidence of domination – is plainly insufficient to meet his initial

burden.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323(1986) (while initial burden does not

require moving party to "produce evidence showing the absence of a genuine issue of material

fact," the moving party must "point[] out to the district court . . . that there is an absence of

evidence to support the nonmoving party's case.").

### 2. *Improper Purpose*

Even assuming for the sake of argument that Lazare had met his initial burden with respect to the "instrumentality" element, the Court finds that a material dispute exists as to whether the Edelman Trust was operated for an improper purpose. New Mexico courts have characterized the "improper purpose" element of an alter ego claim as "designed to apply" where a party "use[s] its [subservient entity] to carry out an unjust act." *Garcia v. Coffman,* 124 N.M. 12, 21 (N.M. Ct. App. 1997) (citation omitted). Varieties of improper purposes include "[m]isrepresentation of a corporation's assets," "participation or direction of improper activities,"and "joint improper acts, such as where the party and subservient [entity] cooperate to perform a series of actions which, if all such actions were performed by either alone, would create liability." *Id*. at 22. Here, Lazare contends that "there is nothing improper about a discretionary spendthrift trust." *See* Doc. 71 at 12-13 (Lazare arguing that the Edelman Trust meets the elements required for the creation of a valid private express trust under New York law, which governs its operation). The Government responds that the Edelman Trust was operated for the improper purpose of "funneling funds from Jon Edelman's off-shore, self-settled Delos Trust through the Edelman Trust to Jon Edelman to hinder and delay collection of Jon Edelman's federal income tax liabilities." (Doc. 72 at 9).

The Court finds that there is sufficient evidence in the record from which a reasonable jury could conclude that the Edelman Trust was operated with an improper purpose. While Lazare argues that the Government "simply jumps to conclusions about the Delos Trust . . . without presenting a single supporting fact," (Doc. 73 at 8 n.1), it is undisputed that Jon Edelman was the grantor or settlor of the Delos Trust, that the Delos Trust and the Edelman Trust had

15

common beneficiaries; and that former Trustee Dennis Stein testified that the Delos Trust occasionally wired funds into the Edelman Trust, rather than wire funds to their common beneficiaries directly.  *See* Doc. 71 Ex. 4 Stein Dep. at 142:13-142:20, 143:24-144:2.  Lazare contends that these steps were undertaken was because it was too "cumbersome" for the off-shore Delos Trust to provide money to its beneficiaries directly, *id.,* while the Government contends that Jon Edelman was using the Edelman Trust, which was nominally settled by his mother, to hide his money from the IRS. This is a material dispute for trial.

### 3. *Proximate Causation*

The final prong of the alter ego test requires the plaintiff to show "some knowing or cooperative effort between the related parties which results in unjust injury to the plaintiff." *Garcia,* 124 N.M. at 17.  According to Lazare, the Government cannot prove proximate causation because the "Government has no claim on Ash estate funds.  If there are any distributions to Jon Edelman that accumulate, the Government is free to attach them.  If the Trust did not exist, funds would remain in the Ash estate."  (Doc. 71 at 11).  The Government responds that it has been injured by "the cooperative efforts among Jon Edelman, Stein, and Dr. Johannes Burger [Trustee of the Delos Trust] . . . by hindering collection of Edelman's federal income tax liabilities," as evidenced by the Government's "continuing difficulties collecting Edelman's taxes," which necessitated the instant action.  (Doc. 72 at 9).  The Court finds that if a reasonable factfinder concludes that the Government has shown Jon Edelman's domination of the Edelman Trust for an improper purpose, it follows that the factfinder could reasonably conclude that the Government was unjustly injured by his efforts.

Accordingly, the Court finds that Lazare's motion for summary judgment on the

Government's alter ego claim should be denied.

**B.      Whether the Edelman Trust Was Self-Settled**

As set forth above, the Court found in its March 29 Memorandum Opinion and Order that the Government's motion for summary judgment on the instant claims should be dismissed, due to the Government's failure to identify "the state-law theory or theories under which it asserts that Jon Edelman has a beneficial interest in the subject property, or that the Edelman Trust is self-settled or a sham." *See supra* at 12; Doc. 77 at 8-9.  While Lazare asserts that the Government's alter ego claim should be assessed under New Mexico law, he, like the Government before him, analyzes the Government's claim that the Edelman Trust was self-settled under federal law.  Lazare's citation to federal caselaw, without more, is insufficient to convince the Court that the Government's self-settlement claim should be assessed under federal standards.  However, because the Government does not dispute the applicable standard – and, moreover, because the Court finds that a genuine factual dispute exists as to the instant claim, even applying Lazare's proposed federal analysis  – the Court finds for purposes of the instant motion only that federal law applies to this claim.

Lazare contends that a self-settled trust typically exists "where the settlor is also the beneficiary," and can also arise "where the funds were provided by the settlor and the settlor is either the trustee and/or is the sole beneficiary."  (Doc. 71 at 14) (citing *Jordan v. Jordan*, 914 F.2d 197 (9th Cir. 1990); *In re Shurley,* 115 F.3d 333 (5th Cir. 1997)).  Therefore, Lazare asserts in conclusory fashion, he is entitled to a summary judgment that the Edelman Trust was not self-settled by Jon Edelman, because the facts in this case "are without dispute that the settlor, Mildred Ash, initially funded the Edelman Trust and now her estate funds the Trust.  Also, the Trustee is Peter Lazare, not Jon Edelman, and the beneficiaries are Jon Edelman and Ash's three

17

grandchildren." *Id.*

The Government responds that Jon Edelman is both the actual settlor -- "the person who provides consideration for a trust . . . even if another person or entity nominally creates the trust" (Doc. 72 at 14) (quoting *In re Brooks*, 844 F.2d 258, 263 (5th Cir. 1988) -- and a beneficiary of the Edelman Trust.  As evidence supporting its claim, the Government points to Lazare's own assertion that money passed from the Jon Edelman-settled Delos Trust into the Edelman Trust on multiple occasions, including when "Jon Edelman used at least $900,000 of his own money wired from the Delos Trust to purchase the subject property[,] yet allowed the property to be placed in the name of the Edelman Trust." *Id.*  According to the Government, even if the Edelman Trust "was valid when created," it became a self-settled trust when it began receiving funds from the Delos Trust, and thus is subject to the Government's tax liens against Edelman. *Id.*

The Court finds that a material dispute exists as to the identity of the actual settlor of the Edelman Trust.  As noted above, there is undisputed evidence in the record that the Delos Trust obtained funds from the Edelman Trust on multiple occasions, though the parties have not proffered any evidence as to when or how frequently these transactions occurred.  While Lazare implies that the instant claim must fail because the Edelman Trust was funded entirely by Mildred Ash at the time of its creation in 1996, Lazare neither demonstrates that the Trust was initially funded in this way[6] nor sets forth legal authority supporting his proposition.

---

[6]Lazare cites generically to Exhibit 2 to the instant motion as support for the position that Mildred Ash "was the only source of funds" for the Edelman Trust at its creation.  *See* Doc. 73 at 9 (citing Doc. 71 Ex. 2).  The Court has reviewed Lazare's Exhibit 2, which appears to be an IRS Form 709 U.S. Gift Tax Return(s) prepared for Mildred Ash for the years 1996 and 1997. Lazare does not offer any explanation as to how these documents support his position.

Accordingly, the Court finds that Lazare's motion for summary judgment as to the Government's self-settlement claim should be denied.

### C.  Whether the Edelman Trust Was a Sham

Finally, Lazare contends that he is entitled to a summary judgment that the Edelman Trust is not a sham, because "[a] sham trust or entity is one where there is no economic reality or substance to the trust."  (Doc. 71 at 14) (citing *Rogers v. United States*, 281 F.3d 1108 (10th Cir. 2002)).  Lazare observes that the issue of whether a trust is a sham for federal tax-collecting purposes "is closely related to an alter ego claim . . . as courts also look to whether the entity alleged to be an alter ego is without economic substance and is merely a paper entity" that "does not exist independent of its [settlor], and . . . was established for no reasonable business purpose or for fraudulent purpose."  *Id.* at 15 (citations omitted).  Further, Lazare suggests that the judicial standard for determining the existence of a sham trust in New Mexico is essentially the same as the federal standard, citing *Edwards v. First Federal Savings & Loan Association of Clovis,* 102 N.M. 396, 399, 405 (Ct. App. 1985), in which the New Mexico Court of Appeals held that a trust was a sham for tax purposes where the settlors "had the power of disposition over the trust without the approval or consent of an adverse party being required" (citations omitted),

Indeed, Lazare's conclusory assertions in support of his position that the Edelman Trust is not a sham mirror his assertions with respect to the alter ego issue: the settlor "was Mildred Ash, not Jon Edelman"; the "Trust was originally, and is currently" funded only by Ash or her estate; Edelman and his children, as beneficiaries, are only empowered to "make requests to the Trustee and hope for positive responses"; and the facts that Stein served as Edelman's personal legal counsel and Lazare is Edelman's "thirty[-]year acquaintance" are not sufficient evidence

19

that the Trustees "did not take their fiduciary obligations seriously."  (Doc. 71 at 16).

In response, the Government points to assorted evidence in the record that, it argues, demonstrates that the Edelman Trust is a sham.  According to the Government, the fact that "the Trust was purportedly created in March 1996, the same month Edelman pleaded guilty to escaping from federal prison,"is highly suggestive.  (Doc. 72 at 15).  The Government further points not only to the Edelman Trust's acceptance of funding from the Jon Edelman-settled Delos Trust, but to former Trustee Dennis Stein's failure to explain why -- if the Edelman Trust did not have sufficient funds to purchase the subject property on its own, and the Delos Trust did – the Delos Trust did not simply purchase the subject property itself, for the benefit of their common beneficiaries.  In addition, the Government points to evidence that the Trust "paid most, if not all, of Edelman's personal expenses[;] made regular, substantial cash disbursements to him[;]  [paid] large expenses related to the *Elusive*"; and advanced an automobile loan to Edelman without requiring him to make installment payments or specifying a maturity date, as purportedly showing that the Trustees "were not independent[,] as they did nothing more than passively acquiesce to Edelman's wishes." *Id.* at 16-17.

The Court finds that Lazare's motion on the instant claim should be denied for much the same reasons as his motion on the Government's other veil-piercing theories.  As set forth above, there is sufficient evidence in the record from which a reasonable factfinder could conclude that Jon Edelman served as the actual settlor of the Edelman Trust, which he funded partly with funds from the Delos Trust.  This evidence, in addition to the other evidence cited by the Government – including the undisputed evidence that Stein and Lazare acted to pay maintenance expenses for the *Elusive*, a yacht actually owned by the Delos Trust – is sufficient to create a material dispute over whether the Trustees acted upon the direction of Jon Edelman in

their operation of the Edelman Trust.

## <u>CONCLUSION</u>

**IT IS THEREFORE ORDERED** that Defendant Peter Lazare's *Revised Motion for Partial Summary Judgment on Whether the Edelman Trust is a Sham, Lacks Economic Substance or is a Self-Settled Trust* (Doc. 71) is DENIED.


_____
UNITED STATES DISTRICT COURT JUDGE

21